101 So.2d 400 (1958)
Walter Peter COGGINS, III, Appellant,
v.
STATE of Florida, Appellee.
No. 57-322.
District Court of Appeal of Florida. Third District.
March 13, 1958.
Rehearing Denied April 14, 1958.
*401 Ellis S. Rubin, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and John C. Reed, Asst. Atty. Gen., for appellee.
HORTON, Judge.
The appellant, a twenty-year-old service man stationed in Miami, Florida, was indicted for first degree murder, tried and convicted. Upon the jury's recommendation of mercy, the appellant was sentenced to life imprisonment. This appeal is from the judgment and sentence below.
The facts that led up to the crime are as follows: The appellant became friendly with the decedent and the decedent's wife several weeks prior to the homicide and had, at the time of the homicide, been staying in the decedent's home. On December 20, 1956, and during the early morning hours of December 21, 1956, the deceased and the appellant had been drinking intoxicants intermittently. About 2:00 a.m. on December 21, 1956, the appellant, after an unsuccessful attempt to have the deceased accompany him away from the home for further drinking, went to the kitchen, got a paring knife and returned to plunge the knife into the deceased's body.
Thereafter, the appellant removed a ring from the deceased's finger, lowered the blinds and windows in the deceased's house, tore the telephone wires from the wall, obtained the keys to deceased's automobile and took the automobile and proceeded to Flint, Michigan, where he was subsequently apprehended by the Michigan State Police. At the Michigan State Police barracks in Flint, the appellant was questioned by an assistant prosecuting attorney regarding the death of the decedent and at that time, the appellant admitted that he had effected *402 the decedent's death by plunging a paring knife into the decedent's body because the decedent would not accompany him away from the home. He admitted the details of the crime, including the fact that he had taken a ring from decedent's finger and had taken the decedent's car and driven it to Flint, Michigan. The appellant gave as his reason for stabbing the decedent: "I got mad and wanted to hurt him."
Numerous assignments of error  seventeen in number  have been made by the appellant, but he has elected to argue only eight of such assignments. However, we have considered all of the assignments of error.
Among the many arguments advanced by the appellant for a reversal of the conviction in the lower court is the fact of his alleged intoxication to such a point that he was unable to form a premeditated design to effect the death of the decedent. Consequently, it becomes necessary to examine the record and particularly the testimony, to ascertain, if possible, whether the acts of the appellant were such as to warrant the jury in concluding, as it did, that he was in sufficient possession of his faculties to have intended the consequence of the crime which he committed. The record adequately supports the jury's conclusions. There was no plea, or at least the record does not disclose the same, of temporary insanity on the part of the appellant due to intoxication. The actions of the appellant, which are not disputed, at the time of the commission of the offense are such that we can not say with any degree of certainty that the jury was not authorized in concluding that there existed a premeditated design to effect the death of the decedent.
It is further urged by the appellant that the court erred in admitting into evidence a purported confession that was unsigned, unsworn and unapproved by the appellant. This confession was admitted after the testimony of the Michigan assistant prosecutor who interrogated the appellant shortly after his apprehension in Flint. It is not contended that the confession was involuntary or that it did not speak the truth. As a matter of fact, on the record as a whole the jury could well have concluded the guilt of the appellant without considering the confession. See Finley v. State, 153 Fla. 394, 14 So.2d 844; Melton v. State, 159 Fla. 106, 30 So.2d 916. The two state troopers who apprehended the appellant, as well as the assistant prosecutor who interrogated him, testified as to the substance and content of the confession and there is very little, if any, conflict between their testimony and that of the alleged confession. Consequently, we conclude that although it may have been that the lower court did not require the proper predicate for the introduction of the confession, it nevertheless appears to have been harmless to have admitted it.
The third major point raised by the appellant is the error of the trial court in allowing evidence of bad conduct while in the service when his conduct or character had not been placed in issue by the appellant. This situation was occasioned by the personal appearance of the appellant in the court room before the jury dressed in a Marine uniform bearing the chevrons of a corporal. Such appearance indicated to the jury as well as the court that the appellant held the rank of corporal in the Marines. The State produced the testimony of an officer of the Marine Corps showing that at the time of the trial and prior to the homicide, the appellant had been reduced in rank to a private and was no longer a corporal. As we read the testimony, there is no inference that the appellant was a person of good or bad reputation and the testimony was apparently offered for the sole purpose of disabusing the minds of the jury that the appellant, who had been in the court room during the course of the trial, was not in fact a corporal as he represented. We do not feel this was harmful error. See Jordan v. State, 107 Fla. 333, 144 So. 669, and Sec. 924.33, Fla. Stat., F.S.A.
*403 The appellant further contends that the lower court failed to reduce to writing its charges to the jury and consequently such failure was fatal and requires a reversal. The appellant did not object to the charges in the form given by the court at any time prior to the jury's retirement. The first objection made by the appellant to the failure of the trial judge to reduce his charges to writing was upon his motion for new trial. It is true that the statute (Sec. 918.10(2), Fla. Stat., F.S.A.) requires the trial judge in a capital case to reduce to writing his instructions to the jury the purpose and intent being that such charges may be made available to the jury in their deliberations. See Sec. 919.04, Fla. Stat., F.S.A. In the case of Driggers v. State, 38 Fla. 7, 20 So. 758, 760, the same question was raised. The court in that case said:
"No exception was taken to the manner in which this part of the charge (oral) was given at the time it was given. In the case of Hubbard v. State, 37 Fla. 156, 20 So. 235, it was held that, although the provisions of section 2920 of the Revised Statutes were mandatory, requiring the court to charge wholly in writing in capital cases, and that an oral charge in such a case would be ground of reversal if exception thereto was properly and seasonably taken, still, if the manner of giving the charge is not excepted to promptly at the time, it is given orally, the error will be held to have been waived thereby, and it will not be ground for reversal on writ of error. The reasonableness of such a rule is self-evident. When the court inadvertently proceeds in such a case to deliver a charge orally, and exception to the manner of its delivery is then promptly taken, the error can at once be rectified by reducing the oral charge to writing. Southern Express Co. v. Van Meter, 17 Fla. 783."
There is no evidence in the record before us that the appellant ever requested that the charges be made available to the jury during its deliberations. It therefore becomes obvious that no prejudice has been shown to have resulted to the appellant for the failure to have the charges in writing. In addition, we conclude that inasmuch as the exception was not duly taken at the time the charges were given but was first raised as a ground in the motion for new trial, the appellant is deemed to have waived such objection. See Weaver v. State, 58 Fla. 135, 50 So. 539.
We have carefully reviewed the entire record in this cause and particularly the testimony and considered all of the contentions advanced by the appellant, and we can reach only one conclusion  that the appellant was afforded a fair and impartial trial. Not all errors are prejudicial and unless such errors go to the fundamental rights of the accused to a fair and impartial trial or deprive him of due process, a conviction otherwise free of error should not be disturbed. It is true that an accused is clothed with a cloak of innocence from the day of his indictment until a jury has returned a verdict of guilty against him; nevertheless, once the cloak has been swept away by an adjudication of guilt after a fair and impartial trial in accordance with due process, the rights of the state and society require that such conviction should not be lightly set aside by an appellate court.
Affirmed.
CARROLL, CHAS., C.J., and PEARSON, J., concur.