SPECTOR, Judge
(specially concurring).
The appellants were convicted by a lawfully convened jury of the offense of murder. Their victim was Eugene Arnold Richardson, a storekeeper in the City of Jacksonville.
Their crime was committed long ago on June 9, 1960, during an attempt to hold up a small neighborhood store operated by the deceased and his wife. Upon returning its guilty verdict, the jury withheld its recommendation of mercy. Accordingly, appellants were sentenced to be put to death by electrocution. On April 4, 1962, the conviction of appellants was affirmed by our Supreme Court on direct appeal (140 So.2d 97).
Virtually the same questions of law were considered at that time as are raised in the present proceeding. More recently, those grounds were raised in a post-conviction proceeding similar to the one at hand and were decided adversely to the appellants by this court in Young et al. v. State, 213 So.2d 462.
*418 Despite the numerous instances in which the legality of appellants’ convictions has been considered and upheld, we are asked to plow the same field again. Already, society has expended more funds financing the quest for exoneration by these convicted murderers than has been made available to the victims of their damnable deed. And the end is not in sight. We will doubtless be asked repeatedly to review this case and on each such review the pleadings filed will, as they have in the past, refer less and less to the facts of the murder. Ultimately the pleadings will simply state that the petitioners were convicted of a statutory offense and will then launch into the now familiar cacophony of claimed constitutional deprivations with never even the slightest reference to the almost forgotten murder.
Nearly a decade has passed since the death sentence was imposed upon appellants. Every moment of their lives since that time, they have faced the threat of electrocution. Indeed, because of an innovative federal judiciary which is never at a loss for discovering new legal doctrines, the likelihood of the sentence being carried out becomes more and more remote. Thus, the State by its failure to resolve definitively its right to carry out the death sentence perpetuates the uncertainty now existing in the minds of the public as well as in the minds of the appellants. Each added day that appellants await the final answer renders their incarceration more and more intolerable. So much more intolerable is their plight likely to be that their incarceration in the face of such uncertainty may be deemed by some as punishment more cruel and unusual than the death penalty itself.
In view of the foregoing, not only do I concur in the judgment affirming the trial court’s refusal to set aside the conviction and sentence herein, but I would also affirmatively hold that the sentence imposed upon appellants in 1960 should now be carried out lest with the passage of time it becomes more and more susceptible to claims of constitutional infirmity arising from the cruel and unusual punishment clause of the State and Federal Constitutions. The State owes its citizens convicted of capital offenses a constitutional duty to avoid inflicting the death penalty in a manner that involves a lingering or torturous death. 9 Fla.Jur., Criminal Law, Section 271. Correspondingly, it owes a duty to the public to carry out the laws duly enacted by the legislature to protect individual lives and property. Care should be taken to discharge that duty.
Affirmed.